IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOSE MONDRAGON,

        Plaintiff,

v.                                                        No. 11-cv-50 WJ/LAM

STATE OF NEW MEXICO, NEW MEXICO
STATE POLICE DEPARTMENT,
CHIEF FERON SEGOTTA, and
HERBERT HINDERS,

        Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

THIS MATTER comes before the Court on Defendants' Motion for Summary Judgment (Doc. 38). Defendants move for summary judgment on the remaining claim in Count One of the complaint, which is a § 1983 claim against Defendant Herbert Hinders in his individual capacity. Plaintiff's opposition is not noted, but due to the dispositive nature of the motion, the Court will presume Plaintiff opposes the motion. Having considered the parties' submissions and the applicable law, the Court finds that the motion is well taken and shall be granted.

**BACKGROUND**

**I.    Procedural History**

The complaint was initially filed on November 22, 2010 in New Mexico state court. Defendants removed the case to federal court on January 17, 2011. The complaint alleged violations under 42 U.S.C. § 1983, based on the Fourth Amendment, and under state tort law under the New Mexico Tort Claims Act, N.M. Stat. Ann. § 41-4-1 to -27 ("NMTCA"). On March 10, 2011, Defendants sought dismissal of the official capacity claims against Defendants

Hinders and Segotta, and dismissal of Counts Two, Three, Four, Five, Six and Seven. In a May 23, 2011 Memorandum Opinion and Order, the Court granted Defendants' motion in full. Thus, only one claim is left in this lawsuit: the § 1983 claim against Defendant Herbert Hinders ("Defendant") in his individual capacity for unlawful seizure and excessive force. Defendant now moves for summary judgment on this claim, contending that on the undisputed facts, he is entitled to qualified immunity as a matter of law.

Defendants' motion for summary judgment was filed on July 8, 2011 (Doc. 38). On August 3, 2011, Defendants filed a notice of completion of briefing (Doc. 46) stating that the time for a response has expired and no extension of time was requested or given. The local rules of the U.S. District Court for the District of New Mexico state that "a response must be served and filed within fourteen (14) days after service of the motion, including a motion for summary judgment." D.N.M.LR-Civ. 7.4(a).

The local rules further require that a memorandum in opposition to summary judgment must "must contain a concise statement of the material facts as to which the party contends a genuine issue does exist," and cautions that "[a]ll material facts set forth in the statement of the movant will be deemed admitted unless specifically controverted." D.N.M.LR-Civ. 56.1(b).[1] Counsel is therefore on notice that failure to respond to a summary judgment motion would result in the acceptance of the movant's facts. *See Gatewood v. Am. Airlines, Inc.*, 188 F.3d 518, 1999 WL 586983, at *2 (10th Cir. 1999) (unpublished table decision) (deeming the moving party's facts to be admitted is reviewed for abuse of discretion). Therefore, the Court will treat Defendant's statement of material facts as uncontroverted and proceed to rule on the motion for

---

[1] Local Rule 56.1(b) is in complete accord with Rule 56 of the Federal Rules of Civil Procedure.

summary judgment in the absence of a response brief from Plaintiff..

**II.     Factual History**[2]

In the early morning hours of February 11, 2008, Defendant was patrolling alone in Mora County, New Mexico, wearing his state police uniform and driving a marked state police vehicle. Just after midnight, Defendant was dispatched to the scene of a breaking and entering in progress at a residence in Mora County. While he was en route, the dispatcher notified him that the suspect had left the residence, provided him with a description of the white vehicle in which the suspect had fled the scene, and advised him that the suspect was "a Joe M" and "possibly drunk." As he was driving to the scene of the attempted breaking and entering, Defendant saw a vehicle matching the description of the suspect vehicle and initiated a traffic stop at 12:36 a.m. Plaintiff was the driver of this vehicle.

Defendant asked Plaintiff for his driver's license. Plaintiff inquired into the reason for the stop, and Defendant told him that he was looking for a white vehicle that was involved in an attempted breaking and entering. Plaintiff admitted he had been drinking, and Defendant noticed a strong odor of alcoholic beverages. Plaintiff told Officer Hinders that he was coming from Ruth Romero's residence. Defendant repeated his request for Plaintiff to produce his driver's license, and Plaintiff complied. The license identified Plaintiff as Jose Mondragon. Defendant returned to his police car and contacted the dispatcher who advised him that Ruth Romero was the person who had reported the attempted breaking and entering.

Defendant returned to Plaintiff's vehicle and informed Plaintiff that Ruth Romero was the reporting party. He asked Plaintiff to step out of the car, and Plaintiff complied. Defendant

---

[2] The facts set forth in this section are supported by the exhibits in the record. For ease of reading, references to supporting exhibits are omitted.

took Plaintiff to the roadway to administer the field sobriety tests, where Plaintiff advised that he could not balance on one foot because of an ankle injury. Defendant therefore did not ask Plaintiff to do nine-step walk and turn or one-leg stand tests and instead attempted to administer other field sobriety tests. Plaintiff was initially resistant, and Defendant had to tell him twice that if he refused to perform the tests, he would be arrested for DWI. Eventually, Plaintiff performed two tests, but his performance on the tests indicated that he was intoxicated. Plaintiff then refused to comply with Defendants' attempt to administer a third test by asking Plaintiff to count backwards from 59 to 47.

At this point, Defendant concluded there was probable cause to arrest Plaintiff. Defendant took out his handcuffs and instructed Plaintiff to turn around and put his hands behind his back. Plaintiff refused. When Defendant attempted to handcuff and arrest him, Plaintiff resisted by keeping his hands close to his body and attempting to pull away. Defendant did not know whether Plaintiff was armed or not. In order to overcome Plaintiff's resistance, Defendant applied an arm bar takedown to gain control of the situation and effect Plaintiff's arrest. As a result of this maneuver, Plaintiff was injured in his right arm and face. Defendant immediately called for an ambulance and applied first aid until the ambulance arrived – approximately fourteen minutes after the takedown. The ambulance transported Plaintiff to Alta Vista Regional Hospital.

## LEGAL STANDARD

Police officers "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This is an objective standard and requires no inquiry into the officers' state of mind. *Id.* To defeat the defense of

qualified immunity, a plaintiff must prove "(1) that the defendant violated a constitutional or statutory right, and (2) that this right was clearly established at the time of the defendant's conduct." *McBeth v. Himes*, 598 F.3d 708, 716 (10th Cir. 2010) (internal quotation marks omitted). If a plaintiff meets this burden, then a third inquiry is presented: whether the defendant has satisfied the usual summary judgment standard of showing that no material facts are in dispute and that he or she is entitled to judgment as a matter of law. *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002).

Summary judgment is only appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(c); *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. Once that burden is met, the nonmoving party must put forth specific facts showing that there is a genuine issue of material fact for trial; it may not rest on mere allegations or denials in its own pleadings. *Anderson v. Liberty Lobby*, 477 U.S. 242, 256-57 (1986). In order to avoid summary judgment, the nonmoving party must put forth enough evidence that a reasonable jury could return a verdict in the nonmovant's favor. *Id.* at 249. A mere scintilla of evidence in the nonmovant's favor is not sufficient. *Id.* at 252. Analysis of a summary judgment motion requires that the court consider all the evidence in the light most favorable to the nonmoving party. *Trask v. Franco*, 446 F.3d 1036, 1043 (10th Cir. 2006).

## DISCUSSION

Defendant moves for summary judgment on Plaintiff's claims of unlawful seizure and excessive force. Defendant contends he is entitled to qualified immunity because a reasonable

5

police officer would have believed probable cause existed to arrest Plaintiff, and the use of force employed was reasonably necessary. The Court agrees that, on the undisputed facts, Plaintiff's constitutional rights were not violated. Thus, the Court finds it unnecessary to address whether the relevant law was clearly established.

**I.      False Arrest**

Plaintiff claims in the complaint that Defendant's "conduct deprived [Plaintiff] of his rights . . . to be free from unreasonable and illegal seizures of the person," compl. ¶ 20, and that Defendant "had no probable cause to believe that Jose Mondragon had committed any crime," *id.* ¶ 24. The Joint Status Report further clarifies that Plaintiff's contentions are that Defendant "made an unlawful arrest using unnecessary and excessive force causing numerous injuries to the Plaintiff." Doc. 15 at 2. Therefore, the Court will construe Count One of the complaint as raising a claim of false arrest.

An arrest is "characterized by highly intrusive or lengthy search or detention," and, in the absence of a warrant, an arrest must be supported by probable cause to believe a crime has been or is being committed. *Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir. 2000) (internal quotation marks omitted). "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Id.* (internal quotation marks omitted). The probable cause inquiry in a qualified immunity case is governed by a purely objective standard, and depends solely "upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). An officer's state of mind is irrelevant. *Id.* at 153. "[T]he probable cause inquiry is not restricted to a particular offense, but rather requires merely that

6

[the] officer[] had reason to believe that a crime—any crime—occurred." *United States v. Turner*, 553 F.3d 1337, 1345 (10th Cir. 2009).

There is no question that Defendant had probable cause to arrest Plaintiff for driving under the influence and for attempted breaking and entering, based on the undisputed facts in this case.

"[S]tate law with respect to arrest is looked to for guidance as to the validity of the arrest since the officers are subject to those local standards, [although] it does not follow that state law governs." *Wells v. Ward*, 470 F.2d 1185, 1187 (10th Cir. 1972). Under New Mexico state law,

> driving under the influence of intoxicating liquor is prohibited in two ways. A person can commit a "per se" violation of the DWI statute by driving a vehicle while having a BAC of 0.08 or more. In the alternative, "it is unlawful for a person who is under the influence of intoxicating liquor to drive a vehicle within this state." A person is "under the influence" of intoxicating liquor if the person "was less able to the slightest degree, either mentally or physically, or both, to exercise the clear judgment and steady hand necessary to handle a vehicle with safety to the person and the public."

*State v. Lewis*, 184 P.3d 1050, 1056 (N.M. Ct. App.) (citing and quoting N.M. Stat. Ann. § 66-8-102).

The facts in this case show that Plaintiff admitted to Defendant that he had been drinking; Defendant noticed a strong odor of alcoholic beverages coming from inside Plaintiff's vehicle; Plaintiff's performance on two DWI tests indicated that he was intoxicated; and Plaintiff refused to participate in a third DWI test. These facts support Defendant's determination that there was probable cause to arrest Plaintiff for driving under the influence. *See Wilder v. Turner*, 490 F.3d 810, 815 (10th Cir. 2007) (holding that "indicia of Plaintiff's alcohol consumption" gave rise to reasonable suspicion to administer field sobriety tests, and that "probable cause developed when twice Plaintiff refused to participate in a field sobriety test"); *see also United States v. Barry*, 98

F.3d 373, 377 (8th Cir. 1996) (finding probable cause existed to arrest defendant for driving under the influence due in part to his failure to pass field sobriety tests).

Defendant also had probable cause to arrest Plaintiff for attempted breaking and entering. The facts show that Defendant had been notified by dispatch of an attempted breaking and entering, and had received a description of the car the suspect had driven off in. Plaintiff's car matched this description and was spotted by Defendant near the area of the alleged crime. Defendant knew the suspect was a "Joe M," and Plaintiff's driver's license identified him as "Jose Mondragon." Further, Plaintiff volunteered that he was coming from the residence of Ruth Romero, and dispatch informed Defendant that the complaining party was a Ruth Romero. The identification of a suspect by a victim of a crime, standing alone, is sufficiently reliable to establish probable cause to arrest that suspect without a warrant. *Easton v. City of Boulder*, 776 F.2d 1441, 1449 (10th Cir. 1985); *see also Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) ("When information is received from a putative victim or an eyewitness, probable cause exists, unless the circumstances raise doubt as to the person's veracity." (citations omitted)). Defendant had no reason to doubt the reliability of the information conveyed to him by dispatch, and so probable cause existed to arrest Plaintiff for attempted breaking and entering.

## II.     Excessive Force

Count One of the Complaint also states a claim for excessive force: "[t]he conduct of [Defendant] . . . constituted unreasonable, unnecessary and unjustified use of excess force," and "deprived [Plaintiff] of his rights . . . to be free from the application of unreasonable and excessive force." Compl. ¶ 20.

In order to recover on an excessive force claim, a plaintiff must show: "(1) that the officers used greater force than would have been reasonably necessary to effect a lawful seizure,

and (2) some actual injury caused by the unreasonable seizure that is not de minimis, be it physical or emotional." *Cortez v. McCauley*, 478 F.3d 1108, 1129 n.25 (10th Cir. 2007) (en banc). The Fourth Amendment reasonableness test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene." *Id.* "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* Thus, "in cases involving claims of both unlawful arrest and excessive force arising from a single encounter, it is necessary to consider both the justification the officers had for the arrest and the degree of force they used to effect it." *Cortez*, 478 F.3d at 1127.

While Defendant does not dispute that Plaintiff suffered an actual injury that was not de minimis, Defendant argues that his use of force was reasonable under the totality of the circumstances. The Court agrees that, on balance, Defendant used no more force than necessary to effectuate the arrest, from the perspective of a reasonable police officer on the scene. Defendant had probable cause to arrest Plaintiff for at least two different crimes: driving under the influence and attempted breaking and entering. Thus, Defendant had a strong justification for the arrest. Defendant's safety was somewhat at risk as well: the stop occurred in the middle of the night, Defendant was patrolling alone, and Defendant was unaware of whether Plaintiff was armed or not. Lastly, and the most important factor for this case, Plaintiff was unresponsive to Defendant's instructions and was actively attempting to evade arrest. Defendant had to ask for a

driver's license twice before Plaintiff turned it over. Plaintiff's behavior was recalcitrant during the administration of the DWI tests, and Defendant twice informed him he would be arrested if he refused to perform the tests. Plaintiff then refused to perform the third DWI test. Crucially, when Defendant then informed Plaintiff he was being placed under arrest and instructed Plaintiff to turn around and put his hands behind his back, Plaintiff refused and resisted by keeping his hands close to his body and attempting to pull away. Under the circumstances, a reasonable police officer would believe some degree of force was necessary to effect the arrest. The maneuver Defendant performed – an arm bar takedown – is a standard method for gaining control over this type of situation, and it was not effected with greater force than was necessary.

## CONCLUSION

On the undisputed facts in this case, Defendant did not violate Plaintiff's constitutional rights to be free of unlawful seizure and excessive force. Therefore, Defendant is entitled to qualified immunity, and summary judgment must be granted to Defendant on Count One of the complaint. Accordingly, Defendants' Motion for Summary Judgment (Doc. 38) is hereby GRANTED. While the granting of this motion for summary judgment resolves all the claims in this case, the Court shall refrain from issuing a final judgment until the Court rules on Defendant's pending motion for sanctions (Doc. 44).

**SO ORDERED.**

_____
UNITED STATES DISTRICT JUDGE